**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**CLARKE A. REPOSA, SR. (F/V DONA MARIA);**
**TODD CHAPPELL, AND REPOSA FISHERIES, INC.,**
**(F/V SISTER ALICE)**
**PLAINTIFFS**

**vs** **C.A. No: 04-494S**

**THE UNITED STATES OF AMERICA,**
**acting by and through,**

**DONALD L. EVANS, in capacity as**
**SECRETARY OF COMMERCE, and**

**CONRAD C. LAUTENBACHER, JR., in capacity as**
**UNDERSECRETARY OF COMMERCE AND**
**NOAA ADMINISTRATOR**
**DEFENDANTS**

## MOTION FOR SUMMARY JUDGMENT

Now come Plaintiff's Clarke A. Reposa, Sr., Todd Chappell, and Reposa Fisheries, Inc., by their counsel, pursuant to Civ.R. 56, and respectfully request Entry of Summary Judgment in the within matter for reason that upon review of the record as a whole, and taking due account of the rule of prejudicial error, pursuant to 16 U.S.C. 1858 and 5 U.S.C. 701, et seq., The Agency Decision, together with the Penalties and Sanctions therein imposed, jointly and severally, is:

(a) Arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; and

(b) Not supported by substantial evidence in that:

(1) Findings of material fact are clearly erroneous based

upon the evidence in the record; and

(2) Necessary legal conclusions are contrary to law or precedent; and

(3) Substantial and important questions of law, policy, or discretion are involved (including the amount of the civil penalties); and

(4) Prejudicial procedural errors have occurred.

Plaintiffs rely upon their Memorandum of even date, filed herewith, in support of the within Motion.

**WHEREFORE**, these Plaintiffs respectfully request that the Initial Decision and Order, dated June 11, 2003 in the above-captioned matter, as thereafter modified by the Modified Decision and Order Based on Post-Hearing Motions, dated August 13, 2003 be reversed, that the penalties assessed be vacated and that the charges of the NOVA and NOPS as filed against all Respondents be dismissed with prejudice.

This matter being a review of administrative action with disputed facts and issues of law, where the Court is required to review the record, in its entirety, the provisions of Local Rule 12.1(a)(1) are deemed inapplicable.

Due to the voluminous size of the administrative record and the complexity of the issues here concerned, an Oral Hearing and

Oral Argument is requested, to assist the Court in reaching its Decision. It is anticipated that not more than One and one-half hours would be necessary for both parties to be heard.

Dated: September 6, 2005

Respectfully submitted,
PLAINTIFFS,
CLARKE A. REPOSA, SR.,
TODD CHAPPELL AND
REPOSA FISHERIES, INC.,
by their Counsel,

Leonard L. Bergersen, Esq.
Registration No. 2839
1070 Kingstown Road
Peace Dale, RI 02879-2431
(401) 789-5345
Fax: (401) 783-8880

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the within Motion was filed with the Court by hand delivery of same this 7th day of September, 2005 and served upon opposing counsel by mailing same, first-class postage prepaid, addressed to:

Anthony C. DiGioia, Esq.
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903; and

J. Mitch MacDonald, Esq.
Enforcement Attorney
NOAA Office of the General Counsel, Northeast
One Blackburn Drive
Gloucester, MA 01930-2298

Leonard L. Bergersen

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**CLARKE A. REPOSA, SR. (F/V DONA MARIA);**
**TODD CHAPPELL, AND REPOSA FISHERIES, INC.,**
**(F/V SISTER ALICE)**
**PLAINTIFFS**

**vs** **C.A. No: 04-494S**

**THE UNITED STATES OF AMERICA,**
**acting by and through,**

**DONALD L. EVANS, in capacity as**
**SECRETARY OF COMMERCE, and**

**CONRAD C. LAUTENBACHER, JR., in capacity as**
**UNDERSECRETARY OF COMMERCE AND**
**NOAA ADMINISTRATOR**
**DEFENDANTS**

**PLAINTIFF'S CLARKE A. REPOSA, SR., TODD CHAPPELL AND REPOSA FISHERIES, INC.'s MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Now come Plaintiff's Clarke A. Reposa, Sr., Todd Chappell and Reposa Fisheries, Inc., by their Counsel, pursuant to Civ.R. 56, and Local Rule 12, and file their Memorandum in Support of Motion for Summary Judgment, saying as follows.

## PRELIMINARY STATEMENT

On back to back trips landing on July 5 and 6, 1999, the F/V Sister Alice, O.N. 243104, Federal Fisheries Permit No. 250128, had good fishing. In addition to landing some 26,000 pounds of her targeted catch of skate for the lobster bait market, she caught and duly reported landing some 1,500 pounds of mixed

finfish. The dealer report for these landings made on July 6, 1999 only reported the receipt of some 1,395 pounds of mixed finfish, resulting in a discrepancy of some 105 pounds from the good faith estimate of her Fishing Vessel Trip Reports filed. Better that she had caught and landed 50 lb. blue lobster, for thence she would have avoided her ensuing travails.

After an alleged "anonymous complaint" about a supposed illegal off-load of regulated multispecies groundfish, Sergeant Michael P. Longtin of the Rhode Island Environmental Police, initiated an investigation July 7, 1999 which was thence turned over to, and completed by agents of the Department of Commerce, National Oceanic and Atmospheric Administration (NOAA), National Marine Fisheries Service (NMFS), Office of Law Enforcement (OLE).

By investigative report consisting largely of hearsay and upon recommendation of the lead case agent, Special Agent Christopher B. McCarron, the NMFS, Office of General Counsel, Northeast Region (OGC-NE or in the alternative, Agency) filed Notices of Violation (NOVA) and Notices of Permit Sanction (NOPS) on October 25, 2000 against Reposa Fisheries, Inc., as owner of the F/V Sister Alice and Todd C. Chappell, as Operator of the vessel, under Case No. NE000093FM/V, alleging three (3) counts of violation of 50 C.F.R., Sections 600.725(I) [2 counts], and Section 648.14(a)(3) and (4), assessing monetary penalties totaling $45,000.00 and a fishing vessel permit suspension of Ninety (90) days. These allegations were vigorously contested by Respondents who requested hearing thereon. Following extensive

discovery conducted by the Agency of the first alleged violations and shortly before first scheduled date of hearing, on November 7, 2001 Agency Counsel filed an additional NOVA and NOPS against Clarke A. Reposa, Sr., in capacities as Owner and Operator of the F/V Dona Maria, under Case No. NE990200FM/V, separately alleging two (2) counts of violation of 50 C.F.R., Sections 648.14(c)(1) and 648.14(a)(3) and (4), assessing further monetary penalties totaling $40,000.00 and further fishing vessel and operator permit suspensions of Ninety (90) days. Over Respondent's objection, this NOVA and NOPS, as thereafter amended by Agency, was consolidated for hearing with the two other cases.

Administrative Hearing was held on the three (3) now consolidated cases at the John O. Pastore Federal Building in Providence, RI commencing Monday June 3, 2002 at 0900 through Friday June 7, 2002 at 1405, before Administrative Law Judge (ALJ) Thomas E. McElligott, at which Agency had the required burden of proof to show, by a preponderance of reliable, probative, substantial and credible evidence [See In the Matter of: Donald Carl Jones, Jill-B, Inc., 2001 NOAA Lexis 13, at *20 (Feb. 6, 2001)] that Respondent violated the Magnuson-Stevens Act and its regulations as alleged in the NOVA and NOPS filed.

Viewed in its totality, the Agency case in chief and rebuttal consisted of uncorroborated hearsay and only the merest scintilla of evidence. Agency failed to meet its burden [See Director, Office of Workers' Compensation Programs, DOL v. Greenwich Collieries, 512 U.S., 290, 129 L.Ed. 2d 221, 114 S. Ct.

2251 (1994)] and the evidence adduced was not sufficient for a trier of fact to reasonably conclude Respondents in fact committed the violations as alleged by Agency, hence this appeal.

## ERRORS CLAIMED

A. Findings of material fact are clearly erroneous based upon the evidence in the whole record:

1. The only direct evidence presented at hearing relevant to the alleged source of the groundfish ultimately at issue, was the testimony of Steven Duncan, which was found not credible by the Administrative Law Judge (Initial Decision, Page 20), and was objectively fatal to Agency's case. "Proof by a fair preponderance of evidence means proof by greater weight of evidence" Uncas Mfg. Co. v. McGrath-Hamin, Inc.,265 F.Supp 1008 (DCRI, 1967). Furthermore, "Plaintiff may not rely on conjecture or speculation to establish essential elements of the case" Petella v. Union Carbide Corp., 234 F.Supp 366 (DCRI, 1964). The balance of evidence adduced by Agency at hearing was largely rank hearsay, perhaps probative that there were long-standing business relationships between the various respondents, and that incident to such relationships they frequently communicated with each other, but not probative of the actual facts alleged as violations. Agency's "evidentiary" materials while massive in weight, simply lacked the quality of constituting substantial evidence probative of the allegations, which is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Penobscot Air Sevs., Ltd. v. Fed. Aviation Admin., 164 F.3d 13, 19 (1st Cir. 1999) [quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477, 95 L.Ed. 456, 71 S. Ct. 456 (1951)]

The testimony at hearing, from the six (6) direct evidence witnesses called on behalf of the Respondents, including that of all three (3) respondents (Barbera, Transcript 475-572, 612-697; Chappell, Transcript 748- 865; Reposa, 954-1014) involved in the consolidated cases was uncontradicted, direct evidence from persons with actual personal knowledge of the material issues of fact of the cases, which was credible.

More importantly, in contrast to the circumstantial gossamer web of Agency, Respondent's credible direct testimony was corroborated by the three (3) third-party competent disinterested person direct witnesses (Hawkins, Transcript 213-274, 434-474; Perry, Transcript 699-731; Fallon, Transcript 732-746), all of whom were in unanimous agreement that the groundfish at issue were landed by the F/V Sister Alice and that no groundfish were seen or offloaded from the F/V Dona Maria on the date in question. Such uncontradicted direct evidence leads to the reasonable conclusion for an impartial trier of fact, that the allegations of the NOVA did not actually occur, as alleged. The direct evidence was overwhelming and under best evidence rules, trumps any gossamer tapestry of "possible", as propounded the less probative circumstantial evidence adduced by the Agency.

2. No subject matter expert testimony as to ultimate facts was noticed by the Agency pre-hearing, no subject matter expert qualified, nor any subject matter expert testimony adduced on behalf of Agency as to ultimate facts at the hearing. Respondent timely noticed and provided Agency pre-hearing with its Civ. R. 26 (a)(2) Expert report and c.v., which were duly admitted as full exhibits at hearing. At hearing Agency stipulated to his qualification as "an expert in the area of marine fisheries as it relates to the operation and practices of the Point Judith Rhode Island fleet." Transcript, Page 589, Lines 13-19. Respondent then adduced at hearing from said qualified expert Dr. Joseph DeAlteris, the unrebutted and unimpeached by Agency, opinion that the groundfish catch at ultimate issue in these cases, as reported being landed by the F/V Sister Alice, was "consistent with everything that she had done through the 1999 period." Transcript, Page 598, Lines 9-15. Dr. DeAlteris then further opined "I didn't see anything unusual about that particular catch as reported by the Sister Alice." Transcript, Page 598, Lines 20-22. With regard to the issues related to 1999 trip and dealer reporting, Dr. DeAlteris's data analysis disclosed and he duly testified that the 1999 trip reporting discrepancy rate for the F/V Sister Alice "ranged from zero to more than 500 pounds on any given day. But on the average, the average was about 119 pounds for a given trip in terms of the discrepancies." Transcript, Page 594, Lines 16-19. He further testified that the average discrepancy also encompassed a range of three to five species,

and finally that the reported and alleged violative discrepancies were typical for the F/V Sister Alice during 1999, in that "Well, it seems to me that's about the same as what they've been doing right along. There's clearly a discrepancy, but it's right within the context of the levels of discrepancies that were going on all year long." Transcript, Page 596, Lines 13-16. This unrebutted expert testimony attributing the groundfish catch at ultimate issue in these cases, to the F/V Sister Alice as typical of her overall efforts during 1999, clearly and unquestionably corroborated and supported all of the other direct testimonial, intrinsic and extrinsic evidence adduced at hearing by the Respondent that the groundfish at issue were not landed on July 6, 1999 by the F/V Dona Maria or Respondent Clarke A. Reposa, Sr., but were in fact caught and landed by Todd Chappell and the F/V Sister Alice, as duly reported in FVTR's filed.

Additionally, the "absolute values" formulation apparently relied upon by the Administrative Law Judge (Initial decision, Page 18), was a specious orange adduced by Agency Counsel during cross-examination, as an isolated hypothetical example using a cumulative error addition formulation (Transcript, Page 609, Lines 8-18) vice the apple statistical analysis utilizing absolute algebraic values error formulation actually used and testified to (Transcript, Pages Page 601, 606, 609, Lines 19-23), by Dr. DeAlteris, and absent independent expert statistical validation totally devoid from this record which was not presented by Agency at hearing, does not support the proposition

for which cited. It also disregards the Expert Report, Table 1 data showing that the F/V Sister Alice had some Thirty-Nine (39) total trip landings of finfish during the 1999 fishing year at or in excess of 450 pounds, some Ten (10) of which were at or in excess of the 1,050 pounds landed on July 5, 1999.

"Positive and uncontradicted testimony unimpeached by other positive testimony or by circumstantial evidence, either extrinsic or intrinsic, cannot be disregarded and should control the decision of the trier of facts" Russoff v. O'Brien, 204 A2d 209 (1965).

3. The majority of the Agency case consisted of "investigative reports" containing rank hearsay, uncorroborated and conclusory statements attributed to various parties, which were directly contradicted by the testimony elicited at hearing from the respondents, from disinterested witnesses, and in many instances on cross-examination, even by the authors of the various reports themselves (Transcript, at cross-examinations, Pages 195-210; 290-370; 390-425; 1061-1062; 1106-1158; 1160-1161). While the Agency exhibits proffered were voluminous, many if not most, lack relevancy, materiality, reliability, and probative value, required qualities even under the liberal admissibility standards of the Administrative Procedures Act. "...findings, to be valid, cannot be based on hearsay alone, nor upon hearsay corroborated by a mere scintilla of evidence." Willapoint Oysters, Inc. v. Ewing (1949, CA9) 174 F2d 676, cert den 3338 US 860, 94 L. Ed 527, 70 S Ct. 101, reh den 339 US 945,

94 L Ed. 1360, 70 S. Ct. 793.

With regard to the as cited circumstantial evidence relied on by the Administrative Law Judge in reaching his conclusions (Initial Decision 20-21), it reflects at best a "possible" finding, rather that the legally required "more probable than not" finding which is required.

As importantly, the admissibility and use of financial information and underlying financial records specifically provided under seal and as disclosed only incident to "ability to pay" information verification requests of the Agency's expert, Gerald Hellerman (Transcript, Page 1068, 1071, 1072, 1073-1077), was manifestly improper both as "rebuttal" evidence and as in use as proof of the case in chief, and such tainted evidence cannot in fundamental fairness, be allowed to sustain the conclusions for which cited.

B. A necessary legal conclusion is contrary to law or precedent:

Most demonstrative of the flawed logic permeating this Initial Decision is the conclusion reached by the ALJ in the consolidated at hearing cases as to Respondent Barbera and the alleged 50 CFR §600.725(j) violation (Initial Decision, Page 20). A 3x5 card used only as a temporary memory aid simply does not rise to the level of permanency required of a "record" under common dictionary formulation. Actual pre-printed "tally sheets" may well qualify, as clearly do purchase and sales invoices and the NOAA 88-30 itself, if so used by the dealer to document a

landing receipt. This particular scrap of paper, temporary in nature by the undisputed evidence in the record (Transcript, Page 532 - 533, 551, 554, 687) does not in common sense or usage, rise to a level of permanency to qualify as a "record". Most significantly, there existed no NOAA/NMFS record guidance to dealers on the date of the offense as to what did qualify as a record required to be retained, and the subsequent Agency guidance to Dealers on the topic (Respondent Reposa's Exhibit 2, Respondent Chappell's Exhibit 4) dated November 15, 2000, is also silent on the question.

The impeachment of Respondent Reposa was likewise contrary to settled law, as later discussed, as was the Admission of Agency Exhibit "KK". This use of non-party alleged misconduct to impeach Respondent Reposa is further demonstrative of the ongoing legal flaws which permeated the entire proceedings under review.

C. A substantial and important question of law, policy, or discretion is involved (including the amount of the civil penalties):

1. The financial penalties and permit sanctions imposed by initial decision, even as modified, are excessive given the record evidence as to these Respondents ability to pay. Even the proffered testimony of the Agency's financial expert on ability to pay (Transcript, Pages 924-954), ran afoul on the shoals of common-sense reality, when contradicted by the testimony of the respondent's and the accountant (Transcript, Reposa at Pages 867-880, Accountant at 881-924) as to the steady decline of their and

the industry's financial condition over the preceding three (3) years, recent financial reverses due to mechanical breakdowns of both fishing vessels, and the uncontradicted expert testimony by the Respondent's C.P.A., as to the rejection of multiple loan applications by conventional lenders due to insufficient income stream to support repayment of the debt amounts requested, despite collateral being available (Transcript, 887-889). Agency's financial expert on cross-examination conceded not only his lack of personal knowledge and experience in the area of commercial fishing finance, but also a multitude of reality factors disregarded, and flawed assumptions in formulation of his opinions, as well as his absolute reliance on abstract net worth analysis technique to the exclusion of multiple real-world limiting considerations. Full and fair consideration of all the credible, supported, and corroborated evidence germane to Respondent's present and future ability to pay any penalty leads to the reasonable conclusion that said ability was substantially impaired, regardless of any perceived, abstract net worth. Furthermore, at this point in time, Judicial Notice can be had of the continued fiscal deterioration of the northeast multi-species fishery, as evidenced by the continued slide in overall landings, onerous regulatory limitations ensuing from then pending fishery litigation, and the declining national ranking of Point Judith as a commercial fishing port.

2. Agency interpreted the required standard of compliance in the Fisheries to be one of mechanical perfection, thence

brought charges and sought penalties to that standard. The Administrative Law Judge without question accepted that formulation as evidenced by review of the record as a whole, and assessed draconian financial penalties likely to not only beggar Respondent Reposa, but deprive a number of fishermen, including Respondent Chappell, of the most viable means of supporting themselves. Such slavish adherence to mechanics runs directly counter to the multiple goals of the Magnusson Act and the Sustainable Fisheries legislation which are also intended to promote the fisheries and their long-term prospects, as well as the livelihoods of those dependent upon the fisheries.

D. Prejudicial procedural errors have occurred, which also constituted conduct on the part of the Administrative Law Judge which was arbitrary, capricious, or an abuse of discretion:

1. As prior raised, the attempted impeachment of Respondent Reposa and admission of Agency Exhibit "KK" on the basis of third-party charges against James Rhatigan, not finally adjudicated, was grossly improper and a clear abuse of discretion by the Administrative Law Judge (Transcript, Pages 999-1001, 1006-1014, 1034-1038). "We have previously held that an appeal from a conviction obtained in District Court serves to vacate automatically the conviction below (citations omitted) . . . Essentially there is no conviction once an appeal is taken. Because the conviction has been vacated, it cannot be used for impeachment purposes under § 9-17-15" State v. Roderick, 403 A2d 1090, 1092 (1979).

As significantly, post-hearing, under RI Superior Court Case No. W3-2001-0217A, on November 7, 2002 all the charges against James Rhatigan were dismissed with prejudice, and the State of Rhode Island DEM ordered to return the cash proceeds of the prior seizure to the vessel owner.

This abuse of discretion was made even more egregious in that Mr. Reposa's credibility was impugned by this prosecutorial adventure, despite him not being the subject of any violation or a party to the actual proceedings, ultimately resolved in favor of the relief Master of the vessel, who was exonerated.

2. On multiple occasions, questioning far beyond the scope of direct examination was allowed to Agency Counsel by the Administrative Law Judge (Transcript, Page 997 et seq.), as well as inappropriate rebuttal (Transcript, Pages 1074, 1089, 1096).

3. The allowance of post-hearing analysis and Agency attachments to post-hearing filings was manifestly improper and grossly prejudicial given the closed state of the hearing record. In particular, the agency attachments sought to impeach unrebutted expert testimony at hearing, when agency had full opportunity to have the underlying evidence analyzed prior to trial, chose not to present it's own expert or separate expert evidence at hearing, and had full opportunity to cross-examine Respondent's expert and expert report. Agency post-hearing sought to discredit or overcome same through re-analysis of the underlying exhibits and the submission in the guise of argument, of the challenged attachments. Same as accepted by the Court,

post-hearing, with a closed evidentiary record, functioned as tailored interpretations of selected information which were testimonial in nature and by Agency counsel's own admission, in many cases based upon "subset" (Agency Rebuttal Brief, FN's 7, 8, 11) of data vice the whole of the data set at issue. Respondents timely noticed and provided Agency pre-hearing with its Civ. R. 26 (a)(2) Expert report and c.v., both of which were duly admitted as full exhibits at hearing. The Expert whose expertise was stipulated to by Agency, by unrebutted testimony attributed the groundfish catch at ultimate issue in these cases, to the F/V Sister Alice as typical of her overall efforts during 1999. Agency's "Attachments" were submitted as multi-function post-hearing analysis, self-authenticating contrary to basic principles of admissible evidence and cited as argument supporting exclusive and pre-determined inferences of Agency's case.

Respondents submit that they were vastly more prejudicial at this stage of the proceedings with a closed evidentiary record, than of assistance to the trier of fact in determining the ultimate issues. U.S. v. Francis, 131 F.3d 1452 (11th Cir. 1997), U.S. v. Bray, 139 F.3d 1104 6th Cir. 1998), Gomez v. Great Lakes Steel Div., Nat'l Steel Corp., 803 F.2d 250 (6th Cir. 1986), U.S. v. Taylor, 210 F.3d 311 (5th Cir. 2000).

4. Under the statute and the 15 CFR Part 904 procedural requirements, Respondent was required to raise ability to pay, in order to have any such information considered at hearing. Had

Respondents herein chosen not to raise it (as chosen by Respondent Barbera in the proceedings), Agency would have had no right whatsoever to any financial information of these parties.

Once so raised by Respondents in the initial required pleading, Agency demands for this information were voluminous and burdensome, and resisted as such by Respondent. Privilege and seal were consistently asserted in the proceedings, both as to the basic information itself and all underlying documentation demanded by Agency's "financial expert" to assess Respondent's financial condition in his statutorily required submissions to Agency. The course and privileged nature of all financial documentation sought by Agency, as well as the Ability to Pay limited use for which it was provided and could be used is amply documented in the Administrative Record now under review (See Record, Exhibits 78, 80, 86, 119, 121, 125, 126 and 140).

The admission of Agency "rebuttal" exhibits QQ-WW was manifestly improper, as was their use in proof of case in chief, being arbitrary, capricious, and/or an abuse of discretion given that all these submissions to Agency were solely incident to verification of ability to pay by the Agency expert, and based on the protected under seal financial filings prior made (Transcript, Pages 1073-1077).

**WHEREFORE**, for the foregoing reasons and the any other reasons which may be adduced at hearing on the within Motion, Plaintiffs respectfully request that Summary Judgment enter to

vacate and reverse the Initial Decision and Order, dated June 11, 2003 in the above-captioned matter, as thereafter stayed and modified by the Modified Decision and Order Based on Post-Hearing Motions, dated August 13, 2003, that the penalties assessed be vacated and that the charges of the NOVA and NOPS as filed against all Respondents be dismissed with prejudice.

Dated: September 6, 2005

Respectfully submitted,
RESPONDENTS,
CLARKE A. REPOSA, SR.,
TODD CHAPPELL AND
REPOSA FISHERIES, INC.,
by their Counsel,

Leonard L. Bergersen, Esq.
Registration No. 2839
1070 Kingstown Road
Peace Dale, RI 02879-2431
(401) 789-5345
Fax: (401) 783-8880

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the within Memorandum in Support of Motion for Summary Judgment was filed with the Court by hand delivery of same this 7th day of September, 2005 and served upon opposing counsel by mailing same, first-class postage prepaid, addressed to:

Anthony C. DiGioia, Esq.
Assistant U.S. Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903; and

J. Mitch MacDonald, Esq.
Enforcement Attorney
NOAA Office of the General Counsel, Northeast
One Blackburn Drive
Gloucester, MA 01930-2298

Leonard L. Bergersen